## WILL OF A HELPLESS VICTIM OF LOCOMOTOR ATAXIA SUSTAINED.

Circuit Court of Licking County.

ALLEN B. GREGG ET AL V. SAMUEL F. MOORE ET AL.

Decided, March Term, 1911.

*Wills—Incapacity Not Shown by Physical Helplessness—Change in Will Does Not Support a Contention of Undue Influence, When—Propounding Hypothetical Questions to Non-expert Witnesses—Charge of Court.*

1. In an action to contest a will it is error to admit the testimony of non-expert witnesses, whose opinions are not based on facts and observations within their own knowledge, but on a state of facts submitted to them by hypothetical questions.

2. The fact that the testator was afflicted with progressive locomotor ataxia and was for a number of years before his death physically unable to perform any task or to help himself in any way, is not sufficient ground for setting the will aside, where it appears that during all that time he directed in detail the operations on farms aggregating over three hundred acres, and with reference to the management of his said lands did all that could have been done by a person of a sound and active mind; and the only testimony tending to show mental incapacity was slight forgetfulness on certain occasions and failure to include in his will certain legacies which he had declared he intended to make.

3. The making of a change in a will, which there is reason to believe was done for reasons satisfactory to the testator, is not, where standing alone, a sufficient reason for setting the instrument aside on the ground of undue influence, notwithstanding the will as so changed did not, in the opinion of some, make a fair and reasonable distribution of the estate of the testator.

4. It is erroneous to charge a jury that "it is coercion produced by importunity, or by a silent, resistless power, which the strong will often exercises over the weak and infirm, so that the motive was tantamount to force or fear."

*Fitzgibbon & Montgomery*, for plaintiff in error.
*A. A. Stasel* and *Norpell, Norpell & Martin*, contra.

POWELL, J.; VOORHEES, J., and SHIELDS, J., concur.

This is a petition in error to reverse the judgment of the court of common pleas, in a proceeding brought by Samuel F. Moore et al, defendants in error, against the plaintiffs in error, to set aside the will of one Ensley Finney Haas, who died on the 13th day of October, 1908.

The petition sets out the relationship of the various defendants, whether legatees or heirs at law of the said decedent, and avers· that the paper writing purporting to be the last will and testament of the said decedent was not his will for the reason that, at the date of its execution, the testator was not of sound mind and· memory, by reason of age and protracted disease, and that he was mentally incapacitated from making a will, or a proper distribution of his property; and, further, that he was influenced and coerced into making and signing said paper by the undue influence of the defendant, Allen B. Gregg, who was named as executor of said will, and of others conspiring with the said Gregg; and, by reason of such influence of the said Gregg and others, and at their suggestion, the said decedent was so influenced and prejudiciced that the paper writing, purporting to be his will, executed at that time, was not the valid and subsisting will of the said Ensley Finney Haas.

They prayed that an issue be made up, which was done by answer of various defendants. The case was submitted to a jury, and a verdict returned setting aside said will.

The contest of said will was based upon two grounds, viz.:

That by reason of age, disease and other causes, the said Ensley Finney Haas was incompetent to do or to understand ordinary business transactions, or to understand and appreciate what he was doing when the said will was signed; that he was then of unsound mind and memory, and was without sufficient mental capacity to know or to understand the extent of his estate, and the persons who would naturally be the objects of his bounty; and, second, that the will was procured to be executed by the defendant, Allen B. Gregg, with others conspiring with him to influence and persuade ·the said testator; and, by reason thereof, an undue influence was exercised ·over him by the

said defendants at and before the time of the execution of said will.

After the death of the said Ensley Finney Haas, said will was admitted to probate and record by the probate court of this county; and this action was brought to set the same aside.

The said will, after making certain bequests, amounting to about the sum of $5,000, by item three, devised and bequeathed absolutely to the defendant, Allen B. Gregg, all the rest and residue of the property, real, personal and mixed, of the said testator, the same consisting, in part, of a farm of 135 acres, besides other property, real and personal.

By the terms of the will, all the legacies were made a charge and a lien upon the real estate of the said decedent. The said Allen B. Gregg was named as executor in said will, which was executed on the 21st of April, 1908.

It appears by the evidence offered that the said decedent, Ensley Finney Haas, was, for a number of years prior to his death, afflicted with what is known as progressive locomotor ataxia, and that, by reason of such disease, he was, for some years prior to his death, physically unable to walk or to help himself in any way; that he was paralyzed from his waist down, and that he had to be carried whenever he moved from one place to another; that, by reason of his affliction, he was a great charge, having to be cared for continually by persons employed for that purpose.

It also appears that he lived with his sister, Martha Goff, a widow, who took care of him and performed many of the services required by him on account of his condition, up until the day of her death, which occurred on the —— day of June, 1907; that after her death, he had for a housekeeper, Harriett Hughes, who lived with him under a contract of employment until his death; that he also had in his employ, as a sort of body servant, to take care of him personally, one William Watson, who lived with him in that capacity until his death; that upon the death of his sister, he became the owner of the undivided half of a farm of 135 acres, he being already the owner of the other undivided half. He also had an estate for life, by the terms of her will, in another farm of 160 acres, besides being the

owner of a large amount of personal property.   At his death he had property, real and personal, of a value of between thirty and thirty-five thousand dollars.

The evidence discloses that during the whole time in which he had charge of this property, he transacted all the necessary business in looking after the same, and in carrying on the business of farming said lands; that while he was physically incapacitated from doing any manual labor, he made all the contracts necessary for conducting the business of the farm; that he bought all necessary materials and sold the products thereof, and that he directed all the farming operations that were carried on on said land; what fields should be plowed, and what crops should be planted when plowed, and generally did all that could be done by a person of sound mind, who was in his physical condition, in the carrying on and the conduct of said business.

The things relied upon as showing that the said decedent was not of sound mind appear to be but few, as shown by this record. It seems that, on the day after the execution of the will, as is shown by the testimony of William Watson, who was his body servant and attendant, on awakening he told him to hitch up the horse, that he had to go to the city of Newark on account of some important business that he wanted to have done.   Watson told him that he was there yesterday, and that the business that he wanted to have done had been done at that time.

It appears from the evidence that, on the day the will was made, the decedent, Ensley Finney Haas, got some intoxicating liquor; that he drank some of it and took part of it home; that he no doubt was under the influence of liquor during the night after his return home.   But there is no evidence that at the time he made the will he was under the influence of liquor; but he directed what he wanted done, how his property should be disposed of, and gave directions for the making of the will, without prompting or assistance from Mr. Kibler, who wrote the will, or any one else.

Some eight months prior to this time he had visited Mr. Kibler's office, and had executed a former will.   When he returned to make the will in question, he brought back to the office said former will and stated to Mr. Kibler that he desired

to make some changes in his will; directed what they were, and the will was written accordingly.

Without going further into details, or reviewing the vast volume of testimony which was offered in this case, *pro* and *con*, touching the capacity of the decedent to make a will at the time when the will in question was made, we have no hesitancy in saying and finding that, so far as his mental capacity was concerned, he was competent to make a will; and that the testimony offered in support of his mental capacity to make a will is clearer, stronger and more direct upon that issue than the testimony of the contestants as to the want of capacity.

There was much of the testimony that was offered on behalf of the contestants that was the testimony of non-expert witnesses, who gave their opinions, not based upon facts and observations which had come to their own knowledge, but from a state of facts submitted to them by hypothetical questions. We think there was error in permitting non-expert witnesses to so testify. The rule as to non-expert witnesses giving an opinion upon an issue of this sort is that the opinion must be based upon facts given by the witness upon which the opinion is based. *Clark* v. *State,* 12 Ohio Reports, page 483.

Another reason why the asking of these hypothetical questions was improper and the answers thereto incompetent is that, in a number of them, after reciting the facts as to the condition of the decedent, it was assumed in the question that his disease had progressed into paresis—an affection of the mind, which the record fails to disclose had ever existed.

The only other transactions which we have been able to find upon which the plaintiffs below relied, as showing want of capacity, were the fact that, at one time within a year prior to his death, he had borrowed money of a brother of his sister's former husband; that he had executed his note therefor, but told a number of persons that Gill Goff—the person from whom he had borrowed it—had made him a present of $500.

As a third circumstance, it is claimed that he told a large number of people that he intended to remember them in his will and to give them a legacy, which was not done.

We do not think that these circumstances are sufficient in themselves to overcome not only the presumption as to his capacity, but the decided weight of the testimony sustaining such capacity.   So, upon the first issue, viz, want of mental capacity, we think that the verdict of the jury is decidedly against the weight of the evidence.

Second.   As to the ground of undue influence:  To establish undue influence, the burden is upon the contestants, and the evidence appearing in the record in this case, in our judgment, fails to establish this issue in favor of the contestants.

It is true, as claimed, that the will is not such as, perhaps, some others would have made.   It is contended by the contestants that it is unreasonable and unfair.   We do not think that the law sustains this theory.   The contention as to undue influence upon the part of the beneficiary in procuring the will in question, has its principal support in the theory that as he was a stranger in blood to the decedent, it would raise a presumption of undue influence exercised upon the testator.

It is further contended that the change in the will is evidence tending to show undue influence.   A change of testamentary intention, bearing upon the question of undue influence in procuring a will, is sometimes an important circumstance; but its force depends mainly upon its connection with associated facts. If made for a reason satisfactory to the testator, although it may seem inadequate to a court investigating the question of undue influence, it furnishes of itself no ground for setting aside the will.   A testator has a right to dispose of his estate in any way he may deem best.   He is not required to make an equitable will; and he may, if he chooses, exclude his relatives; he may even exclude his children, if he have any; and he may divide his estate unequally.

The question in all such cases is:  Was the will the free act of a competent testator?

The reasons for a change of intention in this case do not very satisfactorily appear, but the testimony shows that the change was made at the instance and direction of the testator himself. Courts of equity will not vacate a deed or set aside a will on the ground of influence or importunity, unless it has been unduly or

improperly exercised. Fair argument and persuasion, or appeals to the conscience or sense of duty of the testator, if fairly made, lay no foundation for setting aside the will.

Upon the issue of undue influence as well as that of want of mental capacity, we think that the weight of the testimony is against the contention of the contestants and against the verdict of the jury.

We think also there was error in the charge of the court in this, to-wit, in defining what constitutes undue influence. The court said:

"It is coercion produced by importunity, or by a silent, resistless power, which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear."

This definition could be applied in every case of a will, and any influence that would induce a testator to give a legacy or bequest to any person whatever might be said to be *undue influence* under this definition; and the charge in this regard was misleading and erroneous.

It seems that the verdict in this case is the result either of a misapprehension of the testimony and the weight of the same, or was the result of bias and prejudice in favor of the contestants. The jury must have been influenced by that spirit which sometimes gets into the jury-box, that the will is not such as they would have made if they were disposing of the property that is involved in the will in controversy, and that the will in question was different from what they would have made under the same or like circumstances.

Upon the whole record, the court, is of the opinion that there was such a disregard of the weight of the testimony that the verdict of the jury and the judgment thereon should be reversed, set aside, and held for naught.

The cause is remanded to the common pleas court for further trial and proceedings according to law. Exceptions are noted.